UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | 11-30159-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER ON THE |
| -vs- | * | GOVERNMENT'S |
| | * | MOTIONS IN LIMINE |
| MICHAEL HEATH THETFORD, | * | |
| a/k/a Russ LNU, | * | |
| | * | |
| Defendant. | * | |

On June 18, 2014, the Government filed Motions in Limine, Doc. 57, which Defendant Michael Heath Thetford (Thetford) opposes. The Government requested that this Court exclude evidence of a land transaction that took place in 2004 between Doug Leischer (Leischer) and Shirley and William Jack Winslett (the Winsletts). The Government also sought an order precluding reference to a handwritten document found in the Winsletts' Alabama shop office, as well as precluding the defense from calling Government's counsel, Timothy Maher (Maher), as a witness regarding that document. Finally, the Government requested a ruling from this Court to admit Thetford's plea agreements, factual basis statements, and admissions made in a federal court in Alabama as evidence on the charges against Thetford in the District of South Dakota. This Court held hearings on July 31, 2014, and September 8, 2014, at which evidence and arguments relating to the motions in limine were heard. For the reasons discussed below, the Government's motions in limine are granted in part and denied in part.

## I.    BACKGROUND

The Superseding Indictment in this case charges Thetford with five counts: (1) Felon in Possession of a Firearm, (2) Impersonating a Federal Officer, (3) Interstate Stalking, and (4) and

1

(5) two counts of Tampering with a Witness. Doc. 37. The Government alleges that Thetford posed as an FBI special agent, purportedly investigating the Winsletts for offenses against the United States. Doc. 37 at 1–2. Thetford allegedly asked the Winsletts to submit to a polygraph examination, transported them part of the way from Hughes County, South Dakota, to Sioux City, Iowa, but never completed the trip. Doc. 45 at 2. Thetford later allegedly tampered with the Winsletts to attempt to have them end cooperation with the Government. Doc. 37.

In November 2011, during the course of the investigation into Thetford's alleged conduct, FBI Special Agent Megan Breining inspected a machine shop in Alabama, which is owned by the Winsletts. Doc. 57 at 1. In the shop, Special Agent Breining found a handwritten note listing "RoseAnn" near the top and "Bill Gallagher" immediately below, as well as a fax number and a phone number. Doc. 57-1. Farther below that writing and separated by a hand-drawn line, "States Attorney" and "Tim Maher" were written, as well as a seven-digit phone number. Doc. 57-1. Below all of that writing, an "800" number was written on the paper. Doc. 57-1. Shirley Winslett's testimony at the July 31, 2014 motions hearing established that her husband wrote the notes while she was present. Doc. 69 at 22. Shirley Winslett also testified that her husband wrote the note around the time of, and relating to, the confinement of Doug Leischer[1] for civil contempt relating to his divorce proceedings, Doc. 69 at 23, which was sometime between November 9, 2006, and February 28, 2007. Doc. 69 at 49. At that time,

---

[1] Shirley Winslett testified that the Winsletts became friends with Leischer after he had done some dirt work on their property. Doc. 69 at 19. Shirley Winslett testified that the Winsletts eventually loaned Leischer around $70,000 or more, which he repaid by conveying some property to the Winsletts. Doc. 69 at 26–27. During the course of the Leischers' divorce proceedings, Judge Max Gors of the Sixth Judicial Circuit of South Dakota ruled that Doug Leischer fraudulently conveyed the property to the Winsletts. Doc. 85-1 at 14. Shirley Winslett denied under oath at this Court's July 28, 2014 hearing that she and her husband were trying to help Leischer avoid losing land to his wife in the divorce proceedings. Doc. 69 at 31. Thetford has offered no evidence that the Winsletts have ever been charged with or convicted of any crime relating to this transaction or relating to testimony concerning the transaction.

2

Maher, who is currently Government's counsel, was the Hughes County State's Attorney, and the seven-digit number on the paper was the number to the State's Attorney's office. However, the Winsletts never contacted Maher about the case. Doc. 69 at 23–24.

Following the investigation of Thetford's alleged conduct, three separate federal criminal cases were brought against Thetford—two cases in the Northern District of Alabama, docket numbers 2:12-cr-00349-KOB-HGD and 2:11-cr-00495-KOB-HGD, and this case in the District of South Dakota. Thetford signed plea agreements in each case agreeing to plead guilty to some counts in exchange for the dismissal of others within each respective indictment. Doc. 6; Doc. 57-7; Doc. 57-9.

The Northern District of Alabama, the Honorable Karen O. Bowdre presiding, held a change of plea hearing in Thetford's Alabama cases on March 11, 2013. Doc. 57-10. During the hearing, Thetford was placed under oath and was warned by Judge Bowdre that making false statements was punishable by perjury charges. Doc. 57-10 at 3. Thetford told Judge Bowdre that he had signed the two Northern District of Alabama plea agreements and that he understood the terms of the agreements at the time he signed them. Doc. 57-10 at 6–7. Pursuant to the plea agreement in case 2:11-cr-00495-KOB-HGD, Thetford pleaded guilty to Felon in Possession of a Firearm and Wire Fraud. Doc. 57-10 at 32–33. In case 2:12-cr-00349-KOB-HGD, Thetford pleaded guilty to the offenses of Production of Child Pornography and Receipt of Child Pornography. Doc. 57-10 at 40–43. Thetford affirmed to Judge Bowdre that he committed the offenses described in the factual basis statements. Doc. 57-10 at 33, 41–43. Judge Bowdre accepted Thetford's guilty pleas as made freely, voluntarily, knowingly, and understandingly. Doc. 57-10 at 34–35, 42–43. Judge Bowdre entered judgment in the Alabama cases on

September 23, 2013, and sentenced Thetford to a total of 318 months imprisonment, as well as supervised release thereafter and restitution. Doc. 57-6; Doc. 57-8.

Thetford's plea negotiations in Alabama, which he handled in part himself, included discussion of guilty pleas to two of the counts in this case (Counts 2 and 3) with a joint recommendation that Thetford receive a total sentence of eight years to be served concurrent with his sentence from Alabama. Doc. 6. However, Thetford chose not to avail himself of the benefits of that plea agreement, has shown himself in hearings and personal filings before this Court to be quite an independent thinker, and has exercised his right to have a jury trial. Docs. 15, 22, 35, 36, 68, 79. On February 12, 2014, the Government filed the Superseding Indictment in this case, Doc. 37, and trial of this case is to start on October, 20, 2014.

## II.    ANALYSIS

### A.    Evidence Relating to the Hughes County Land Transaction Between Doug Leischer and the Winsletts, the Writing from the Winsletts' Shop Office, and Subpoena of Government's Counsel

In preparation for trial, the Government filed Motions in Limine, requesting preliminary evidentiary rulings on two categories of evidence. Doc. 57. First, the Government requests an order restricting any "comment or reference, whether direct or indirect, to Doug Leischer's Hughes County land transaction with the Winsletts; papers from Winsletts' Alabama shop office referencing attorney RoseAnn Wendell, Deputy Bill Gallagher, and prosecutor Tim Maher; as well as from subpoenaing or calling Government's counsel Tim Maher as a jury trial witness, absent a pretrial ruling from this Court." Doc. 57 at 3–4. Second, the Government requests a preliminary ruling allowing admission of the Alabama plea agreements, the factual basis statements, and the transcript of the Alabama change of plea hearing. Doc. 57 at 4.

Generally, relevant evidence is admissible unless other rules of evidence, the Constitution, federal statute, or rulings by the Supreme Court require exclusion. Fed. R. Evid. 402. "Irrelevant evidence is not admissible." Id. Evidence is relevant if it has "any tendency" to make a "fact of consequence in determining the action" more or less likely to be true. Fed. R. Evid. 401. Evidence that is otherwise admissible may be excluded by the court if its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

The note from the Winsletts' shop office in Alabama has no tendency to make any fact of consequence to the charges against Thetford more or less likely. The charges in this case accuse Thetford of coming to Hughes County, South Dakota, in May of 2010 and posing as an FBI agent in an interaction with the Winsletts in which he hoped to gain information about the couple. The charges further allege that Thetford, who has a prior felony conviction, was in possession of a firearm at that time. Finally, the charges allege that in February of 2013, Thetford wrote a letter to the Winsletts with the intent to intimidate, threaten, or corruptly persuade them not to testify against him in his trial. The note found at the Winsletts' shop was written by Mr. Winslett no later than February of 2007, more than three years prior to Thetford's alleged contact with the Winsletts. The note concerned a wholly unrelated transaction, which no party claims has anything to do with Thetford's alleged conduct. Thus, the handwritten note found in the Winsletts' shop office is irrelevant under Rule 402 and inadmissible at trial. The inclusion on the note of Maher's name and number with the Hughes County State's Attorney's Office also poses a risk of confusing the issues and misleading of the jury.

5

Defense counsel, however, asserts that references to the Winsletts' land transaction from 2004 with Doug Leischer are relevant to impeach the credibility of the Winsletts, on whose testimony much of the South Dakota charges presumably will rest. "The credibility of an accuser is generally relevant." United States v. No Neck, 472 F.3d 1048, 1054 (8th Cir. 2007). However, the rules of evidence limit the ways in which a witness' character for truthfulness may be challenged. See Fed. R. Evid. 608. Except for certain criminal convictions, extrinsic evidence of specific conduct which shows a witness's character for truthfulness or untruthfulness is generally not admissible. Id. 608(b); see also United States v. Martz, 964 F.2d 787, 789 (8th Cir. 1992) ("While documents may be admissible on cross-examination to prove a material fact or bias, they are not admissible under Rule 608(b) merely to show a witness's general character for truthfulness or untruthfulness" (internal citations omitted)). However, "the court may . . . allow" prior instances of conduct to be inquired into on cross-examination if such conduct is "probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608.

There has been no evidence presented that the Winsletts were convicted of a crime relating to the land transaction, and the transaction is irrelevant to any material issue of fact other than the credibility of the Winsletts. Similarly, Shirley Winslett has not been charged with or convicted of perjury. Therefore, extrinsic evidence relating to these specific instances of conduct is not admissible. However, Thetford has presented evidence that a South Dakota Circuit Court Judge found the land conveyances between the Winsletts and Leischer to be "fraudulent," and that Shirley Winslett's testimony may have been false. Doc. 85-1 at 14. Thetford has a good-faith basis to believe that the Winsletts have engaged in fraudulent conduct in the land transaction and that Shirley Winslett lied under oath about the transaction, which may be relevant to her character for truthfulness or untruthfulness.

In this case, the land transaction with Leischer is a specific instance of conduct that bears on at least Shirley Winslett's character for truthfulness or untruthfulness. C.f. United States v. Almeida-Perez, 549 F.3d 1162, 1174–75 (8th Cir. 2008) (finding no plain error in the district court allowing inquiry into illegal entry into the country under 608(b) as relevant to character for truthfulness); see also United States v. Sanders, 343 F.3d 511, 519 (5th Cir. 2009) (finding alleged contract fraud to be probative of character for truthfulness). Additionally, the alleged perjured testimony of Shirley Winslett denying that she and her husband were attempting to help Leischer shield assets in his divorce is relevant to her character for untruthfulness. See United States v. Shinderman, 515 F.3d 5, 16–17 (1st. Cir. 2008) (finding false responses on government questionnaire were probative of character for truthfulness).

Therefore, the allegedly fraudulent transaction may be inquired into on cross-examination of the Winsletts pursuant to Rule 608(b). However, because the land transaction is a collateral issue, extrinsic evidence relating to the land transaction or prior testimony through other witnesses or documentation is excluded by 608(b). United States v. Thomas, 467 F.3d 49, 56 (1st Cir. 2006); United States v. Olivo, 80 F.3d 1466, 1471 (10th Cir. 1996); Martz, 964 F.2d at 789. No mention of the Leischer land transaction should be made during opening statements as the admissibility of that information hinges on how the Winsletts testify at trial. If Leischer land transaction information comes into evidence, this Court intends to instruct the jury that such evidence may be used only for the limited purpose of evaluating the credibility of the Winsletts. Further, if such information comes in, the Court will limit such evidence so as to avoid having Thetford transform the case into a trial over whether the Winsletts engaged in a fraudulent land transaction unconnected to Thetford or committed perjury regarding the land transaction.

The Government also requests an order forbidding Thetford from subpoenaing or calling Maher, the Government's counsel, as a trial witness. As stated above, the document found in the Winsletts' shop office with Maher's name on it is irrelevant to the charges pending against Thetford. Additionally, Thetford's counsel indicated at the September 8, 2014 hearing, that they had no intention of calling Maher as a witness.

### B.   Evidence of Alabama Plea Agreements, Factual Bases, and the Transcript of the Change of Plea Hearing

The Government next seeks a ruling for admission of the plea agreements, factual basis statements, and transcript from the change of plea hearing relating to Thetford's federal charges in the Northern District of Alabama. Some of Thetford's statements to Judge Bowdre and a portion of the factual basis statements signed by Thetford and filed in the Northern District of Alabama are relevant to the South Dakota charges. The Government recognizes that other portions of those materials are either irrelevant or more unfairly prejudicial than probative to the South Dakota charges such as references to Thetford's convictions of Production of Child Pornography and Receipt of Child Pornography, or to child pornography being on Thetford's computer. Thetford opposes the Government's request raising a panoply of arguments, Doc. 62, addressed below.

#### 1.   Relevance Argument

Generally, relevant evidence is admissible. Fed. R. Evid. 402. Evidence that is otherwise admissible may be excluded by the court if its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Within the statements made by Thetford during the change of plea hearing and the factual basis statements for his Alabama convictions, Thetford admits to, among other things, traveling

8

to South Dakota to the home of the Winsletts, transporting the Winsletts toward a location to take a polygraph examination, and communicating with the Winsletts via email following the meeting in South Dakota. Doc. 57-7 at 4. Thetford's statements also acknowledge his access and control over the camera used to take pictures for making fake FBI credentials. Doc. 57-9 at 4. Thus, the statements are relevant as direct evidence of Thetford's guilt or innocence with respect to the conduct occurring in South Dakota, as well as to show ownership and control of the residence where evidence was found and some of the instrumentalities allegedly used to create fake FBI credentials.

### 2.     **Hearsay Argument**

Thetford's oral and written statements made during and relating to his guilty pleas are not hearsay, and therefore are not excluded by Rule 802. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A statement is an oral or written assertion, "or nonverbal conduct, if the person intended it as an assertion." Id. at 801(a). However, when a statement "was made by the party in an individual or representative capacity," "is one the party manifested that it adopted or believed to be true," "was made by a person whom the party authorized to make a statement on the subject," or "was made by the party's agent . . . on a matter within the scope of that relationship and while it existed," the statement is not hearsay when it is offered against the party. Id. at 801(d)(2). In this case, Thetford signed factual basis statements within the plea agreements for the Alabama cases, acknowledging that the facts were "substantially correct." Doc. 57-7 at 6; Doc. 57-9 at 5. Thetford also pleaded guilty to the Alabama charges and acknowledged that he committed the acts described in the factual basis statements. Doc. 57-10 at 32–33, 40–41. Thus, the factual basis statements and admissions in each plea agreement and during the change of plea hearing are statements made or

adopted by Thetford, and when they are offered against him by the Government, the statements fall outside the definition of hearsay.

### 3. Due Process Argument

Thetford also makes several arguments that depend on the Court finding that his pleas and the statements relating thereto were involuntary.[2] Thetford has appealed his Alabama federal court convictions on the basis that his pleas were not made voluntarily and knowingly, but the United States Court of Appeals for the Eleventh Circuit has not yet ruled on that appeal. Ultimately it is for the Eleventh Circuit or Judge Bowdre on a subsequent § 2255 motion to decide such a collateral attack on a defendant's conviction. See 28 U.S.C. § 2255(a) (providing that a movant seeking relief may seek relief from the "court which imposed the sentence"). However, for purposes of admissibility at trial on the South Dakota charges, this Court must make a preliminary determination on the admissibility of Thetford's oral and written statements inculpating himself as a part of his pleas of guilty in Alabama. See Fed. R. Evid. 104(a); see also United States v. Soto-Beniquez, 356 F.3d 1, 33 (1st Cir. 2003) (analyzing whether a defendant's previous guilty plea in another case was involuntary as the defendant claimed for purposes of determining admissibility in a subsequent trial). A defendant's confession is only admissible if made "freely, voluntarily, and without compulsion or inducement of any sort." Hquipaynes v. Washington, 373 U.S. 503, 513 (1963). A defendant's confession is involuntary if, considering the totality of the circumstances surrounding the confession, the defendant's "will was overborne at the time" of the confession. Id.

---

[2] Thetford argues that the guilty pleas "were not knowingly, voluntarily, and intelligently entered" and that "Confrontation and due process rights are compromised by admitting the statements." Doc. 62 at 2–5.

10

In determining whether Thetford's guilty pleas and associated statements were made voluntarily or not, this Court does not begin with a blank slate. Before accepting Thetford's guilty plea, Judge Bowdre was required to "address [Thetford] personally in open court and determine that the plea [was] voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). The Rule 11 procedures guide a judge ascertaining the voluntariness of a defendant's plea by "expos[ing] the defendant's state of mind on the record through personal interrogation." McCarthy v. United States, 394 U.S. 459, 466–67 (1969). Additionally, the Rule 11 procedures facilitate the determination in subsequent proceedings that the defendant's plea was voluntary. Id. at 467. The transcript of Thetford's change of plea hearing documents that Judge Bowdre followed all the appropriate Rule 11 procedures. Doc. 57-10. Judge Bowdre questioned Thetford under oath and following extensive questioning made express findings that Thetford entered his pleas "freely, voluntarily, knowingly, and understandingly." Doc. 57-10 at 34–35, 42–43. Moreover, Thetford himself affirmed that he had not been promised anything or threatened "in any way" in order to induce him to enter his guilty pleas. Doc. 57 at 14.

Notwithstanding his statements at the change of plea hearing and the findings of the Judge Bowdre, Thetford maintains that the conditions of his pretrial detention within the Hoover City Jail, in Hoover, Alabama, constituted "torture"[3] which had the effect of overbearing his will

---

[3] Thetford cites to the Torture Victim Protection Act of 1991 (TVPA), Pub. L. No. 102-256, 106 Stat. 73 (1992), for the definition of "torture." Doc. 62 at 2. However, the terms of the TVPA limit its applicability to an individual acting under the authority of a *foreign* nation." Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992) (emphasis added). This Court was unable to find any cases in which the definition of torture from the TVPA was applied in other contexts. The Constitution, of course, prohibits "cruel and unusual punishments" and thereby outlaws torture. U.S. Const. amend. VIII; see also Wilkerson v. Utah, 99 U.S. 130, 136 (1878) ("[I]t is safe to affirm that punishments of torture . . . are forbidden by [the Eighth Amendment] to the Constitution.").

and coercing him to plead guilty to the Alabama charges. See Doc. 62 at 2–3; Doc. 62-1. Thetford originally challenged the conditions of confinement in a § 1983 claim[4] filed against the City of Hoover, Alabama, and several officers who worked there at the time of his confinement. Doc. 62-1 at 16–19. Thetford also presented testimony on conditions of confinement at Hoover City Jail at the September 8, 2014 evidentiary hearing.

The testimony of the witnesses provides only equivocal support for Thetford's claim of unconstitutional conditions of confinement. Gregory Perry, Thetford's former cellmate at Hoover City Jail, testified about several complaints he had about the jail. Most of Perry's complaints related to the treatment of medical conditions from which Perry suffered, but included complaints about the use of restraints and artificial lights throughout the day. However, Perry's testimony also revealed that detainees were allowed out of their cells for much of the day, allowed to communicate with legal counsel, and had access to entertainment such as playing cards, board games, and television. Thetford also testified about the conditions of the confinement at Hoover City Jail. During his roughly eight months at the jail, Thetford says much of the staff treated the detainees like scum. He also claims that the jail officials blocked his access to legal materials and meaningful meetings with legal counsel, but Thetford admitted on cross-examination that he was able to meet with counsel around six times regarding his Alabama cases and was also able to write and file legal documents from within the Hoover City Jail.

---

[4] The § 1983 claim was filed in the United States District Court for the Northern District of Alabama, Case No. 2:13-cv-011833-LSC-PWG. The action was dismissed for failure to prosecute the claim after Thetford failed to abide by a court order seeking to have him amend his complaint to allege "specific facts" relating to "specific defendants associated with the claims." N.D. Ala. Case No. 2:13-cv-011833-LSC-PWG, Docs. 21, 30.

In United States v. Barrett, 514 F.2d 1241 (5th Cir. 1975), the United States Court of Appeals for the Fifth Circuit considered whether a defendant's pretrial confinement in a county jail, which had been found by another court to have confinement conditions constituting cruel and unusual punishment, coerced the defendant into pleading guilty to felony charges. The court determined that the record did not show the plea to be coerced because, despite complaining to his attorney, the defendant stated under oath that his plea was made "knowing[ly] and voluntar[ily]," that "he believed the government could prove his guilt," and that "he had been promised nothing" to induce the plea. Id. at 1243.

Likewise, Thetford's statements during his change of plea hearing dispel his claim of coercion. As discussed above, Thetford affirmed under oath to Judge Bowdre that his pleas were being made voluntarily, and without threat or coercion. Furthermore, during the change of plea hearing, after the factual basis for each charge was read and Thetford had pleaded guilty, Judge Bowdre asked whether Thetford engaged in the conduct described. Doc. 57-10 at 33, 40–41. Each time, Thetford acknowledged under oath that he had. Id. After Thetford responded to one question, "I stipulated to those facts, Your Honor," Judge Bowdre sought to clarify by asking: "So none of this fancy word game about I stipulated to those facts. You admit that you did those things; is that correct?" Doc. 57-10 at 40–41. Thetford responded: "That's correct." Id. at 41. Moreover, Thetford's claims of unconstitutional confinement are less credible than the claims in Barrett. While the defendant in Barrett had been housed in a facility a court had found violated inmates' rights against cruel and unusual punishment, Thetford relies only on his testimony, his former cellmate's testimony, and the allegations contained in his now-dismissed § 1983 action. The guilty pleas and related statements Thetford made regarding the Alabama charges were knowing and voluntary, and therefore are admissible to the extent explained below.

13

### 4.   Rule 410 Argument

Alternatively, Thetford argues that Rule 410 bars admission of the pleas and any related statements. Rule 410 precludes admission of evidence of "(1) a guilty plea that was later withdrawn; (2) a nolo contendere plea; (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 . . . ; or (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Fed. R. Evid. 410. By its own terms, Rule 410 does not apply to a guilty plea that has been accepted and not withdrawn. See United States v. Benson, 640 F.2d 136, 138 (8th Cir. 1981) (interpreting the language in Rule 410 as it was then incorporated in Federal Rule of Criminal Procedure 11(e)(6)). None of the statements made in conjunction with Thetford's guilty pleas fall under the first three prongs of Rule 410.

The factual basis statements contained in the Alabama plea agreements and affirmed by Thetford as correct during the change of plea hearing were accepted by Judge Bowdre as the basis for Thetford's guilty pleas. Thetford argues, however, that the statements are a part of a "universal" plea negotiation including Thetford's charges in the District of South Dakota. Doc. 62 at 6. Thetford reasons that, because he chose not to proceed with his contemplated guilty plea in the District of South Dakota, his Alabama factual basis statements and admissions are mere discussions of a plea agreement. Thus, the issue is whether the statements Thetford made in the plea agreements and at the change of plea hearing in Alabama are "statement[s] made during plea discussions . . . that did not result in a guilty plea." Fed. R. Evid. 410.

Thetford's statements at issue were not made during plea discussions failing to result in a guilty plea. The only statements that the Government has sought to introduce are the factual

basis statements made in each of the two Alabama plea agreements and portions of the change of plea colloquy before Judge Bowdre. The Government is not proposing the admission of statements that took place during actual negotiations between Thetford and an Assistant U.S. Attorney. Nor is the Government seeking to introduce Thetford's plea agreement and factual basis statement signed to cover the South Dakota charges.

Each of the three cases had its own separate plea agreement, Doc. 6; Doc. 57-7; Doc. 57-9, and neither of the Alabama plea agreements purport to resolve the other two pending cases at the time, Doc. 57-7 at 1 (stating that the United States agreed not to prosecute other cases of which it was presently aware except for the two other cases pending at the time, 2:13-cr-00349-KOB-HGD in the Northern District of Alabama and this case); Doc. 57-9 at 1 (stating that the United States agreed not to prosecute other cases of which it was presently aware except for the two other cases pending at the time, 2:11-cr-00495-KOB-HGD in the Northern District of Alabama and this case). The plea agreement entered into in South Dakota does not purport to resolve the Alabama cases, however the agreement was contingent upon Thetford entering pleas in the Northern District of Alabama to the satisfaction of the U.S. Attorney's Office for that district. Doc. 6 at 3. The U.S. Attorney's office for the District of South Dakota did not sign either of the Alabama plea agreements, nor did those Alabama plea agreements purport to bind the U.S. Attorney's Office in South Dakota. Doc. 57-7 at 11, 17; Doc. 57-9 at 11, 19. Likewise, the U.S. Attorney's Office for the Northern District of Alabama did not sign the South Dakota plea agreement, and the South Dakota plea agreement did not purport to bind Alabama prosecutors. Doc. 6 at 9–10. Each agreement was a separate plea agreement, and the fact that the South Dakota agreement did not result in a guilty plea does not transform Thetford's guilty

15

pleas and admissions in Alabama into mere statements made during plea negotiations that did not result in a guilty plea under Rule 410.

Moreover, the plea agreement signed by Thetford in this case contains a provision in which Thetford acknowledged that, should he violate the terms of the plea agreement, "[a]ll testimony and other information the Defendant has provided at any time to attorneys, employees, or law enforcement officers of the United States, to the Court, or to the federal grand jury may and will be used against him in any prosecution or proceeding." Doc. 6 at 3. The Eighth Circuit has consistently held that that such provisions waiving Rule 410 objections are enforceable against defendants unless "there is some affirmative indication that the agreement was entered into unknowingly or involuntarily." United States v. Quiroga, 554 F.3d 1150, 1154–55 (8th Cir. 2009). The South Dakota plea agreement, which was signed by Thetford and his counsel at the time, explains the maximum possible penalty Thetford was facing for each count to which he agreed to plead, explained that the Court was not bound by the sentencing recommendation, and outlined Constitutional rights that would be waived through the entry of a plea of guilty. Doc. 6. In short, there is nothing about the South Dakota plea agreement itself that raises doubts about whether Thetford signed it knowingly and voluntarily. Thus, while Rule 410 does not appear to apply to the statements that the Government seeks to admit, to the extent that it does, Thetford has waived that objection.

### 5. Rule 403 Argument

Finally, Thetford argues that the factual basis statements and admissions made during his plea hearings should be excluded under Rule 403. Rule 403 allows a court to exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403. As explained above, the statements made or adopted by Thetford in the plea agreements and change of plea hearing are relevant to the current charges. Thetford's statements are highly probative, because they are the defendant's own statements and admissions about engaging in the alleged conduct.

Thetford argues that the statements are unfairly prejudicial. "Damaging evidence is always prejudicial; the question is whether the evidence is *unfairly* prejudicial." United States v. Musk, 719 F.3d 962, 967 (8th Cir. 2013) (quoting United States v. Tyerman, 701 F.3d 552, 563 (8th Cir. 2012). "Unfair prejudice under Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Condon, 720 F.3d 748, 755 (8th Cir. 2013) (quoting Firemen's Fund Ins. Co v. Thien, 63 F.3d 754, 758 (8th Cir. 1995). Generally, Thetford's statements will allow the jury to make a decision on a proper basis—the defendant's own admissions about relevant conduct. However, Thetford's statements admitting to possession and manufacture of child pornography carry a high risk that the jury will base its decision on an improper basis. This risk of unfair prejudice substantially outweighs any probative value to the South Dakota case of statements regarding the basis for Thetford's child pornography conviction. Therefore, statements made or adopted by Thetford within the plea agreements or change of plea hearing in which he admits possessing or manufacturing child pornography are excluded by Rule 403.

### III.  CONCLUSION AND ORDER

This Court is ruling on motions in limine, that is evidentiary issues presented pretrial without the benefit of trial testimony. If circumstances arise justifying a different ruling on the evidence, counsel are to approach the Court outside the hearing of the jury to discuss the matter and seek a different ruling from the Court. For the reasons explained herein, it is hereby

ORDERED that the Government's Motions in Limine, Doc. 57, are granted to the extent that there be no comment or reference to the papers found in the Winsletts' shop office that reference attorney RoseAnn Wendell, Deputy Bill Gallagher, and prosecutor Timothy Maher. It is further

ORDERED that the Government's Motions in Limine, Doc. 57, are granted to the extent that extrinsic evidence regarding the land transaction between Douglas Leischer and the Winsletts may not be offered, except to the extent such transaction may bear on the character for truthfulness or untruthfulness of a witness, it may be inquired into on cross-examination. It is further

ORDERED that the Government's Motions in Limine, Doc. 57, are granted to allow admission of the factual basis statements and admissions made by Thetford in the Alabama plea agreements and change of plea hearing before Judge Bowdre, except statements referring to Thetford's possession or manufacture of child pornography are not admissible. It is further

ORDERED that the Government's Motions in Limine, Doc. 57, are granted to preclude Thetford from subpoenaing or calling Government's counsel as a witness.

Dated October 8, 2014.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE